IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MERSAIDIES FOSTER | ) | CASE NO. |
| 13814 Liberty Avenue | ) | |
| Cleveland, Ohio 44135 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | |
| UNIVERSITY HOSPITALS | ) | **JURY DEMAND ENDORSED** |
| HEALTH SYSTEM, INC. | ) | **HEREIN** |
| c/o Janet Miller, Statutory Agent 3605 | ) | |
| Warrensville Center Road  MSC 9110 | ) | |
| Shaker Heights, Ohio 44122 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| GREER WAGNER | ) | |
| c/o Univ. Hospitals Health System, | ) | |
| Inc. | ) | |
| 11100 Euclid Avenue | ) | |
| Cleveland, Ohio 44106 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Mersaidies Foster, by and through undersigned counsel, for her Complaint against the Defendants University Hospitals System, Inc. and Greer Wagner, states and avers the following:

**PARTIES**

1. Plaintiff Mersaidies Foster resides in Cuyahoga County, Ohio and was at all relevant times an "employee" of Defendants as defined under the Family Medical Leave Act, 29 U.S.C. §§ 2601 et seq. ("FMLA").

2. Defendant University Hospitals System, Inc. ("UH") is a domestic corporation doing business in the Northern District of Ohio and, at all relevant times, is and has been an

"employer" as defined under the FMLA.  Defendant UH employed Plaintiff in Cuyahoga County, Ohio.

3. Defendant Greer Wagner resides in the Northern District of Ohio and was at all relevant times acting in the interest of UH as Plaintiff's supervisor.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises under the laws of the United States, and pursuant to the FMLA, 29 U.S.C. § 2617.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) as Defendant UH is an Ohio corporation doing business in Cuyahoga County, Ohio, Defendant Greer Wagner resides in this district, and the causes of action alleged herein arise from Defendants' activities in Cuyahoga County, Ohio.

## ALLEGATIONS COMMON TO ALL COUNTS

7. Plaintiff is a former employee of UH.

8. UH employed Plaintiff as a Clinical Technician Assistant.

9. Defendant Wagner was Plaintiff's supervisor at all relevant times during Plaintiff's employment.

10. UH hired Plaintiff on or about March 12, 2013.

11. Plaintiff was a strong performer for UH.

12. Plaintiff had little to no recent meaningful history of discipline during her employment with UH.

13. Plaintiff regularly received positive performance reviews.

14. Plaintiff regularly received pay raises.

15. Plaintiff suffered a workplace injury on or about July 20, 2017 (hereinafter referred to as "July 2017 OJI") and reported her workplace to UH.

16. Plaintiff filed a claim for worker's compensation benefits due to the July 2017 OJI on or about July 20, 2017.

17. Plaintiff's went to see her doctor, who advised her to take off work until she had a follow up appointment on July 24, 2017.

18. On July 24, 2017, Plaintiff was in too much pain to attend the doctor's appointment.

19. On July 24, 2017, Plaintiff contacted UH and rescheduled her appointment for August 1, 2017.

20. At her August 1, 2017, the doctor provided Plaintiff a return to work note with a fifteen-pound lifting limitation.

21. Plaintiff notified Defendants of the return to work limitation.

22. After UH received notification of Plaintiff's work limitation, Kara Laiadaka in UH's corporate health department called Plaintiff on August 4, 2017.

23. Laiadaka informed Plaintiff that she could no longer work in her position due to her fifteen-pound lifting restriction.

24. On August 8, 2016, Laiadaka called Plaintiff and advised that UH had an open position that accommodated her work limitation.

25. Laiadaka advised Plaintiff that UH would contact her concerning where and when to report to work.

26. On August 8, 2017, after speaking to Laiadaka, Plaintiff received a phone call from Defendant Wagner and Megan Bowski, a UH human resources generalist. Defendant Wagner advised

Plaintiff that UH was terminating Plaintiff's employment because of a no-call no-show, as she did not go to the rescheduled July 24, 2017 doctor's appointment.

## COUNT ONE

### FMLA

27. Plaintiff restates each and every prior paragraph of this Complaint as if fully restated herein.

28. Defendants are each an "employer" within the meaning of the FMLA.

29. Plaintiff was an eligible employee under the FMLA.

30. Plaintiff suffered a workplace injury and informed Defendants of her need for medical leave.

31. Plaintiff's injuries at all relevant times constituted a serious health condition within the meaning of the FMLA.

32. Defendants did not give Plaintiff notice of her leave rights under the FMLA.

33. Defendants knew or should have known that Plaintiff's need for leave was for an FMLA-qualifying reason.

34. Plaintiff was entitled to leave under the FMLA.

35. Defendants at all relevant times were aware of the extent and nature of Plaintiff's injuries as well as Plaintiff's continuing treatment by a health care provider.

36. Plaintiff's serious health condition rendered her unable to perform her job.

37. Defendants treated Plaintiff's absence due to her serious health condition on July 24, 2017 as a no-call, no show, when it should have been treated as an FMLA absence.

38. Defendants denied and interfered with Plaintiff's FMLA rights and benefits to which she was entitled.

39. Plaintiff gave Defendants notice of her need for and intention to take leave.

40. Defendants' conduct is in violation of 29 U.S.C. § 2615(a)(1), which makes it unlawful for any employer to interfere with, restrain or deny the exercise of or the attempt to exercise any right that the FMLA affords.

41. Defendants did not act in good faith and did not have reasonable grounds for believing that their conduct was not a violation of Title 29 U.S.C. § 2615, such that Plaintiff is entitled to additional, liquidated damages.

## COUNT II

Worker's Compensation Retaliation

42. Plaintiff restates each and every prior paragraph of this Complaint as if fully restated herein.

43. Plaintiff suffered an adverse employment action in contravention of Ohio Revised Code ("R.C.") §4123.90.

44. Plaintiff satisfied all notice requirements set forth in R.C. §4123.90.

45. Defendants terminated Plaintiff's employment in violation of R.C. §4123.90, which prohibits employers from retaliating against employees who file a claim or instituted, pursued or testified in any proceedings under the worker s' compensation act for an injury or occupational disease which occurred in the course of and arising out of her employment.

46. Defendants acted with malice in doing so in that they consciously disregarded Plaintiff's rights.

47. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages.

## COUNT III

Wrongful Termination in Violation of Public Policy

48. Plaintiff restates each and every prior paragraph of this Complaint as if fully restated herein.

49. R.C. 4123.90 expresses a clear public policy prohibiting retaliatory employment action against injured employees.

50. Defendants' termination of Plaintiff jeopardizes this public policy.

51. Defendants' termination of Plaintiff was motivated by conduct related to this public policy.

52. Defendants had no overriding business justification for terminating Plaintiff.

53. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages.

## COUNT IV

Disability Discrimination – Termination

54. Plaintiff restates each and every prior paragraph of this Complaint as if fully restated herein.

55. Plaintiff had a physical impairment as a result of the July 2017 OJI that substantially limited one or more of major life activities, including working.

56. In the alternative, Defendants perceived Plaintiff as being disabled.

57. Plaintiff is and was perceived as disabled within the meaning of R.C. § 4112.01(A)(13).

58. Defendants terminated Plaintiff's employment based on her disability in violation of R.C. § 4112.02.

59. Plaintiff was qualified for her job.

60. Defendants treated Plaintiff less favorably than similarly-situated non-disabled employees.

61. As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer damages.

## COUNT V

Disability Discrimination – Failure to Accommodate

62. Plaintiff restates each and every prior paragraph of this Complaint as if fully restated herein.

63. Plaintiff was disabled within the meaning of R.C. § 4112.01(A)(13).

64. UH and Plaintiff agreed to an accommodation that would not require Plaintiff to exceed her lifting restriction.

65. Defendants terminated Plaintiff and thereby failed to reasonably accommodate Plaintiff's disability.

66. Plaintiff was able to safely and substantially perform the essential functions of her job with accommodation.

67. Defendants' conduct violated Ohio Revised Code § 4112.02.

68. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages.

69. Defendants acted with malice, entitling Plaintiff to an award of punitive damages.

## COUNT VI

Race Discrimination - Termination

70. Plaintiff restates each and every prior paragraph of this Complaint as if fully restated herein.

71. Plaintiff is African American.

72. Plaintiff was qualified for her job.

73. During her employment Plaintiff was harassed on the basis of race by a Caucasian supervisor named Antionette (last name unknown).

74. Antionette worked closely with Defendant Wagner and they were friends.

75. Antionette has access to Kronos, a timekeeping system used by UH to log hours worked by employees.

76. Upon information and belief, Antionette could make changes in Kronos employee records.

77. In February 2017, Antionette gave ice cream to all of the workers in Plaintiff's work area station except Plaintiff.

78. Antionette verbally stated that she was not providing ice cream to Plaintiff because she is African American.

79. In February 2017, Antionette told Plaintiff she had been startled by Plaintiff's dark skin.

80. In or about February or March 2017, Plaintiff complained to Bonnie Suydam that Antionette was making racist remarks.

81. In March 2017, Plaintiff began to receive write-ups for attendance issues even though she was at work on time and not missing days.

82. Upon information and belief, Antionette made changes in Kronos to make it appear as though Plaintiff was having attendance issues.

83. Antionette made changes in Kronos to get Plaintiff in trouble for reporting Antionette for making racist remarks.

84. Plaintiff sent multiple emails to UH's management-level employees stating that she was being retaliated against because she had reported of racial harassment.

85. Plaintiff scheduled a meeting with UH's Vice President of Human Resources on July 27, 2017, regarding her complaints of racial harassment.

86. Defendants terminated Plaintiff on August 8, 2017.

87. Defendants treated Plaintiff less favorably than other employees due to her race.

88. Defendants terminated Plaintiff based on her race in violation of R.C. § 4112.02.

89. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages.

90. Defendants acted with malice, entitling Plaintiff to an award of punitive damages.

## COUNT V

Race Discrimination - Retaliation

91. Plaintiff restates each and every prior paragraph of this complaint, as if it were fully restated herein.

92. Subsequent to Plaintiff's reporting of racial harassment, Defendants subjected Plaintiff to unfounded write-ups and disciplinary actions.

93. Subsequent to Plaintiff's reporting of racial harassment, Defendants terminated Plaintiff's employment.

94. Defendants' actions were retaliatory in nature based on Plaintiff's opposition to unlawful discriminatory conduct in violation of R.C. §4112.02(I), which makes it an unlawful employment practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice."

95. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages.

96. Defendants acted with malice, entitling Plaintiff to an award of punitive damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff demands from Defendants the following:

(a) Reinstatement;

(b) An award against each Defendant, jointly and severally, of compensatory and monetary damages to compensate Plaintiff for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim;

(c) An award of punitive damages against each Defendant, jointly and severally, in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and costs; and

(e) Such other relief to which Plaintiff is entitled.

Respectfully submitted,

*/s/ David W. Neel*
David W. Neel (0033611)
David W. Neel, LLC
16781 Chagrin Blvd.
Shaker Heights, Ohio 44120
Telephone: (216) 522-0011
Telecopier: (844) 548-3570

*Attorney for Plaintiff Mersaidies Foster*

## JURY DEMAND

Plaintiff demands a trial by jury on all claims asserted in this Complaint.

*/s/ David W. Neel*
David W. Neel (0033611)